### AMELIA F. PRAY *vs.* FLORENCE MILLETT.

### York.    Opinion November 25, 1922.

*A female plaintiff in an action for alienation of the affections of her husband by a
female defendant, must allege and prove, that the action was brought within
three years after the discovery of the offense, to be entitled to the
special remedy created by the statute.*

Where a special remedy is created by statute for enforcing a created right it is
subject always to the conditions and limitations which legislative wisdom
incidentally defines.

One woman suing another woman, by virtue of a statutory provision, for aliena-
ting her husband's affections, must allege and prove, as an essential pre-
requisite for laying a claim to the remedy provided, that the action was
"brought  .  .  .  .  within three years after the discovery of the offense."

On exceptions and motion for new trial.    This is an action on the
case, alleging alienation of affections of the husband of plaintiff by
defendant, brought under Sec. 7, Chap. 66, of the R. S.    The defend-
ant pleaded the general issue, and the case was tried to a jury, and a
verdict for $10,666.00 was returned for plaintiff.    At the close of the
testimony the defendant moved for a directed verdict for defendant
on the ground that plaintiff had not proved that action was brought
within three years after discovery of the offense, which motion was
denied, and defendant excepted, and also filed a motion for a new
trial.    Motion sustained.    New trial granted.

The case is fully stated in the opinion.

*Willard & Ford,* for plaintiff.

*Edward S. Titcomb and Emery, Waterhouse & Paquin,* for defendant.

SITTING:    CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON,
DEASY, JJ.

DUNN, J.    In this case one woman has sued another woman for
alienating her husband's affections and recovered a verdict.    The
statute upon which proceedings are based, in prescribing a mode for
enforcing the right which it creates, directs that action shall be
"brought  .  .  .  .  within three years after the discovery of the
offense."    R. S., Chap. 66, Sec. 7.

A special remedy given by statute upon particular facts is subject always to the conditions and limitations which legislative wisdom incidentally defines. Hence a plaintiff so circumstanced must allege and prove every fact thus made a prerequisite for laying a claim to the remedy provided. *Cape Elizabeth* v. *Lombard,* 70 Maine, 396; *Peru* v. *Bartlett,* 100 Maine, 213; *Karahalies* v. *Dukais,* 108 Maine, 527; 36 Cyc., 1188.

For the reason that the statutory provision relied on constitutes it an essential part of the cause that she would make, this plaintiff must allege and prove the alienation of the husband's affections as of a day within three years of the date of the writ, or, alleging the alienation as of a day before that time, then she additionally must allege and show that the discovery thereof by her was within three years of the bringing of the action. Her allegation of the alienating is laid within three years of the writ's date, but she falls far short of showing, either by direct evidence or by inference from the circumstances in evidence, that her discovery of the alienation was within that time. Indeed, that the plaintiff could first have maintained an action against the defendant, for the loss of the husband's consortium, sooner than three years before the suing out of the writ, is so clearly established by the proof as to justify the assertion that the statement scarcely is disputed on the record.

This plaintiff married one William Pray. Eventually they made their home at Everett in Massachusetts. While living together there, fifteen or more years ago, an attending physician commended the defendant for employment, she being a nurse and masseur. Mr. Pray employed her. She cared for him and his wife, intermittently, for a time. Through two summers the defendant was hired to assist Mrs. Pray with the housework at the latter's farm in Lyman, Maine. Upon returning to Massachusetts at the end of the second season, the defendant became a clerk in a Boston store. Afterward Mr. Pray left for Georgia to spend a winter. His wife neither accompanied nor came to him. When he was there the defendant also went to Georgia. She says that her going was at Pray's request to act as his nurse, Mrs. Pray approving. Defendant was back home again, following a stay of several months in the South, before Pray was. The next winter these two went to Georgia together. In a different town than that in which they formerly were they occupied the same suite at a hotel, the defendant coming to be well known in

the community as Mrs. Pray. In the following summer they were at the farm in Lyman. The next winter found them in Georgia. Mrs. Pray's time was passed partly in Massachusetts and partly in California. Matters went along without any especial variance until Pray's death in 1921, except that he and the defendant were in Portland the last two winters that he lived, a small boy relative of the woman's living with them. During these winters they stayed at two hotels, and at one of them at least they were registered by him as "William Pray and party." Defendant says that Pray paid her for her services as "nurse and housekeeper," . . . . "but not by salary."

Mrs. Pray's own testimony, to say nothing at the moment of corroboration that it has, convincingly demonstrates that this action was begun tardily. There is much meaning in her words. Says she, in rehearsing marital experiences: "We had no trouble before that woman came to massage him, in any way, manner, or shape." Twice had Mrs. Pray been to the South with her husband, but "I ain't been the last ten or twelve years because he has had her." Again, "A man went down there to see him, to see Mr. Pray, and when he got there he found her there and he didn't stay. He came back and came right down to the house and told me how it was down there, what she was doing," . . . . "eight or nine years or ten" ago. Mrs. Pray, for several seasons prior to the period that the statutes fixes, did not summer at her Lyman home, "where we was, he and I, always, until he got in with this woman." The reason why she did not is that her husband and the defendant were there. Mrs. Pray went to Lyman, three or four years before the trial, and the trial occurred within six months of the writ's date, "to see about getting hold of something that they were taking away." Her husband met her at the door. The defendant was there, "but she kept up-stairs and didn't come down where I was." A neighbor testifies that Mrs. Pray, in 1918, said that she and her husband had been living apart for fifteen years, the defendant being the cause. And, without designing to set up a limiting bar, the defendant adds that Mrs. Pray, refusing to accept the explanation that was proffered on the first home-coming from Georgia, accused her of living with Pray as his wife.

No extrinsic facts are interposed. There is no showing that Pray after the alienating had returned his affections to his wife, and that the affections were alienated by the defendant once more. The evi-

dence is all one way. It is of the absolute continuance of the alienation. And continuousness would effect only the subject of damages. To be sure there is evidence that, within the three years which the law gives for the commencement of an action, the Prays executed a separation deed containing a trust provision for Mrs. Pray's support. Prudence doubtless prompted the wife to have assurance that she would have a home and be supported in Everett while the defendant was "off with him." Recognizing the fact of an existing condition the deed does not detail its cause, nor yet does it recite the length of the existence of that condition. But the effect of the testimony is that, years before the document was entered into, the plaintiff had had a suspicion aroused in her mind. Being thus put upon her guard she in diligence could have ascertained facts which doubtless would have proved her case. The record is indicative that she did so learn, but in sheer neglect of a given right and remedy she remained inactive. Even when credibly and truthfully told about doings in the South, which being told about she believed, she still remained quiescent. When at last by means of pretext and connivance the title to the old home at Lyman—that home which was hers before her marriage to Pray— was vested in the name of this defendant, then a desire to avenge long-endured unhappiness fired the plaintiff's soul. She herself says that it was the knowledge of that conveyance which prompted suit.

The situation at the close of the testimony justified the requested directing of a verdict for the defendant. An exception was marked against the refusal to so direct. Argument, however, seems to relate the more to a general motion for a new trial. The result will be the same whichever is pressed.

It is not strange that the jury sympathized deeply with the plaintiff in her hard case. But it is regrettable that sympathy was permitted to sway the jury's judgment. Unfortunately a decision was reached in utter disregard of the evidence relating to the time within which the plaintiff, after discovering the alienating, commenced this action.

The verdict must be set aside.

Let the mandate be,

> *Motion sustained.*
> *New trial granted.*